CANNEY *v.* CANNEY.

1. ATTORNEY'S LIEN—DECREE OF DIVORCE.
    Under a decree in a divorce case, the wife was permitted to acquire title to real estate owned by herself and husband jointly, on paying the sum of $800, which represented what was left after taking out her original interest and the sum awarded as alimony. *Held*, that the husband's solicitor had no lien on such money for his services.

2. HOMESTEAD—CONSTRUCTION OF STATUTE.
    The homestead provisions of the Constitution and statutes should be liberally construed.

3. SAME—SALE—TITLE TO PROCEEDS.
    General creditors can have no lien on money derived from the sale of their debtor's homestead, made in pursuance of a decree in a divorce case.

·Appeal from Wayne; Hosmer, J.   Submitted April 24, 1902. · (Docket No. 48.)   Decided September 17, 1902.

Bill of interpleader by Sophia Canney against Alfred Canney, John W. McGrath, James H. Pound, Frederick Speier, Sophia Keith, and Thomas S. Parker, receiver. From the decree rendered, defendant Canney appeals. Modified.

*James H. Pound* (*Charles R. Robertson*, of counsel), for defendant Canney.

*Wesley L. Nutten*, for defendant McGrath.

MOORE, J.   This is a bill of interpleader, wherein a decree of interpleader was awarded to complainant. There was no appeal taken from this decree.   The case then came on to adjust the equities between the defendants, and a decree was made as follows:

"It is ordered, adjudged, and decreed that the fund paid into court by complainant be distributed as follows:
"*First.* That the sum of two hundred and fifty-two

dollars, and interest from February 14, 1900, be paid to defendant John W. McGrath, he having the first lien upon said fund.

"*Second.* That the sum of one hundred and seventy-five dollars, and interest from November 23, 1899, be paid to the defendant James H. Pound.

"*Third.* That the sum of one hundred and ninety dollars, with interest from November 23, 1899, to wit, the sum of eighteen dollars and eighty-five cents, be paid to Sophia Keith, or her solicitor, Maier B. Breitenbach.

"*Fourth.* That the register of said court pay out of said fund the fee on final decree herein.

"*Fifth.* That the balance be paid over to the defendant Thomas S. Parker, receiver of William Jacquemain; it appearing that the amount due said receiver is in excess of the balance of said fund after the payments aforesaid."

An appeal was duly taken by the defendant Alfred Canney, who insists the decree should be reversed as to the claim of Mr. McGrath and Mr. Parker, receiver; that it should stand as to the claim of Mr. Pound, and be modified as to the claim of Mrs. Keith.

Alfred Canney and complainant, Sophia Canney, were for many years husband and wife, and, before complainant sued him for a divorce, they jointly owned a lot of land in the city of Detroit,—a single lot,—upon which were two dwelling houses, one of which was rented. Complainant filed a bill of complaint for a divorce. There was a contest, in which Mr. McGrath appeared as the solicitor for Mr. Canney. After a hearing, a decree was granted. In this decree Mrs. Canney was required to deed her interest in the real estate to her husband upon his paying her $2,500 within a certain time, and, upon his failure to do so, he was required to deed to her his interest in the houses and lot upon her paying to him $800. Mr. Canney did not pay the $2,500, and, before Mrs. Canney paid the $800, she was notified by various parties that they claimed a lien upon the fund. As she did not know to whom to pay the money, this bill was filed.

A good many questions are raised by counsel, but we regard two of them as decisive. The first question to be

considered is whether Mr. McGrath is entitled to a lien upon the fund. It is evident that in the divorce case the circuit judge regarded the real estate, with the two houses upon it, as worth $3,300. The title was in both the parties. Each had an interest in the houses and lot, if each interest was of like value, of $1,650. In addition to decreeing to the complainant the value of her interest, she was awarded a portion of the interest of defendant, so that complainant's interest in the houses and lot was determined by the decree to be $2,500, while the defendant's interest was decreed to be $800. Can it be said this $800 is the result of the litigation, or is it the residuum? Suppose the real estate, instead of being one lot of land with its buildings, was 33 acres of land, each acre of which was of the same value, and it had been decreed that the title to 25 acres should be in Mrs. Canney, and 8 acres in Mr. Canney, would it be claimed the solicitor had a lien upon the 8 acres for the value of his services? If not upon the land, why upon the proceeds of the land? In the divorce proceedings an original bill and a cross-bill were filed, in which each of the parties accused the other of wrongs against the marital relation. The primary question was whether a decree of divorce should be granted. As an incident, after that question was settled, the question of the division of the property arose. Both of these questions were decided adversely to Mr. Canney. No property came to him as the result of the litigation which he did not have before it began, but the reverse of that is true. It cannot be said a decree was obtained against Mr. Canney because of the services of his solicitor, but that it was obtained notwithstanding his efforts. In the second edition of Jones on Liens, at page 100 ( § 153), it is said:

"The lien of an attorney upon a judgment is properly denominated a lien in the broad sense of the term, although it rests merely on the equity of the attorney to be paid his fees and disbursements out of the judgment which he has obtained. It is not a lien that depends upon possession, as liens ordinarily do. There can be no possession of a

judgment, for this exists only in intendment of law. The execution issued upon a judgment does not represent the judgment, and the possession of the execution is not a possession of the judgment. In regard to possession, this lien of an attorney resembles the maritime lien of a seaman upon the vessel for his wages. Both liens are exceptions to the general rule as respects the element of possession.

"This lien, therefore, not arising from a right on the part of the attorney to retain something in his possession, but being a right to recover for his services in obtaining a judgment for his client, is called the attorney's charging lien. It is so called because the costs and fees of the attorney are made a charge upon the judgment recovered, and this charge is enforced by the court. Some confusion has arisen in the decisions on this subject from a failure in many cases to observe the distinction between the retaining lien and the charging lien. The latter lien never extends beyond the costs and fees due the attorney in the suit in which the judgment is recovered; but a retaining lien extends to the general balance due the attorney from the client for professional services, and his disbursements in connection therewith. In other words, the charging lien is a special lien, and the retaining lien is a general lien."

At page 102 (§§ 155,156) it is said:

"An attorney's lien upon a judgment, as by force of usage we are permitted to designate his claim upon the judgment recovered, is founded upon the same equity which gives to every person who uses his labor and skill upon the goods of another, at his request, the right to retain the goods till he is paid for his labor. This equitable principle is derived from the civil law. It is considered reasonable and proper that an attorney, by whose labor and at whose expense a judgment has been obtained for his client, should have an interest in that judgment which the law will regard and protect. Lord Kenyon declared 'that the convenience, good sense, and justice of the thing required it.' * * * It was doubtless recognized upon the ground of justice that the attorney had contributed by his labor and skill to the recovery of the judgment, and the court, wishing to protect its own officers, exercised its power to that end; or, as Lord Kenyon puts it: 'The party should not run away with the fruits of the cause without satisfying the legal demands of his attorney,

by whose industry, and, in many instances, at whose expense, those fruits are obtained.'"

This does not indicate that where a decree is obtained against a client, and he happens to have some property left after the decree is satisfied, the solicitor has a lien for his services upon that property. The conditions in this case are not such as to give the solicitor a lien upon the $800.

It is said the decree in favor of Mr. Parker, who represents creditors, should not be permitted to stand, because the fund represents the homestead of Mr. Canney; that he had no desire to have his homestead sold; and, because the court compelled a sale, that he cannot be deprived of the results of the sale, but is entitled to the fund, as against his creditors, to reinvest in a homestead. Section 2, art. 16, of the Constitution, provides for the exemption of a homestead to residents of the State. See, also, section 10362, 3 Comp. Laws. These provisions of the Constitution and the statute have been liberally construed. See *Eagle* v. *Smylie*, 126 Mich. 612 (85 N. W. 1111), and *Corey* v. *Waldo*, 126 Mich. 706 (86 N. W. 122), where there is quite a full collation of the authorities. Under the facts disclosed by this record, we do not think the general creditors of Mr. Canney were entitled to this fund.

The remaining question is, Should the decree as to Mrs. Keith be modified? Mr. Canney was a witness in the divorce case. It was claimed he then committed perjury. He was arrested upon that charge. At about that time he assigned his claim to the fund to his sister, Mrs. Keith. The assignment was in the usual form, and authorized her to receive the money, and to receipt for it. The claim is made that the purpose of the assignment was to enable Mrs. Keith to procure bail for her brother, and to enable her to aid him in making his defense in the criminal case. The solicitor for Mr. Canney in his brief says he wants Mrs. Keith to have all she is equitably entitled to, but claims the amount allowed her is much too large. Mrs. Keith appears to have been, as a sister naturally would be,

very much interested in her brother when he was arrested, and spent much time in his behalf. She carried food to him at the jail, she procured bail for him, and, after it was done, made a home for him at her house. She loaned him money. Counsel was procured for him. There is a dispute between the parties as to what she did, and how much she has received. She certainly rendered services along the line which was contemplated when the assignment of the fund was made to her, and we are not satisfied the circuit judge allowed her too much.

The decree is reversed as to Mr. McGrath and Mr. Parker, receiver, and affirmed in all other respects.

HOOKER, C. J., GRANT and MONTGOMERY, JJ., concurred.